THRASHER, APPELLANT, *v.* SCHREIBER, RESPONDENT.

(No. 5,951.)

(Submitted September 18, 1926. Decided October 22, 1926.)

[250 Pac. 600.]

*Quieting Title—Water Rights—Ditches—Oral Contracts—When Unenforceable Because of Indefiniteness.*

Appeal—Findings—When Conclusive.
1. In an equity case the findings of the trial court will not be overturned unless there is a decided preponderance of the evidence against them.

Contracts—Essentials.
2. To constitute either a valid verbal or written agreement, the parties. must express themselves in such terms that their intentions can be ascertained therefrom to a reasonable degree of certainty.

Water Rights—Quieting Title to Interest—Oral Contract—When Unenforceable Because of Uncertainty.
3. In an action to quiet title to an interest in a ditch and water right, based upon conversations had by plaintiff with defendant, for work done on the ditch by him, evidence of plaintiff as to the alleged contract *held* so indefinite and uncertain, under section 7501, of the Revised Codes of 1921, as not to constitute an enforceable agreement, it not appearing therefrom what amount of work plaintiff was to perform, or in which one of several ditches he was to have an interest, *etc.*

[1]　Appeal and Error, 4 C. J., sec. 2869, p. 900, n. 96.
[2]　Contracts, 13 C. J., sec. 59, p. 266, n. 6.
[3]　Waters, 40 Cyc., p. 762, n. 81.

1.　See 2 R. C. L. 202.
2.　See 6 R. C. L. 644.

[77 Mont. 221.]

*Appeal from District Court, Powell County; George B. Winston, Judge.*

ACTION by S. T. Thrasher, sometimes known as Stephen Thrasher, against Frank O Schreiber. From a decree for defendant, plaintiff appeals. Affirmed.

*Messrs. Scharnikow & Paul,* for Appellant, submitted a brief; *Mr. W. J. Paul* argued the cause orally.

*Mr. C. S. Wagner* and *Mr. W. H. Maloney,* for Respondent, submitted a brief; *Mr. Wagner* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

The controversy involved in this action arose out of the following situation: The plaintiff is, and for more than ten years last past has been, the owner, in possession and entitled to the possession, of the north half of section 16, township 9 north, range 11 west, in Powell county, and during the same period of time the defendant and his predecessors in interest were the owners, in possession and entitled to the possession, of the southeast quarter of said section. Blum Creek flows diagonally across the defendant's land from the southwest corner to the northeast corner thereof.

About October 1, 1915, in a certain action then pending in the district court of Powell county, wherein the Pioneer Placer Mining Company was plaintiff, and Otto A. Swant, Henry W. Schreiber and others were defendants, these two named defendants were adjudged and decreed to be in possession, and entitled to the possession, of said southeast quarter of section 16, and it was likewise adjudged and decreed that they were the owners of seventy-five inches of the waters of Gold Creek, appropriated July 10, 1910, and 150 inches of the waters of said creek, appropriated October 31, 1910, together with the ditches, dams and flumes used in connection therewith, for the purpose of irrigating their said lands. What transpired

[77 Mont. 221.]

with reference to the title of this southeast quarter between the date of the above-mentioned decree and November 26, 1918, is not disclosed, but on the latter date the state of Montana conveyed the same to Otto Swant, together with all the water rights appurtenant thereto.

Some time in the fall of 1918 Swant conveyed this land to Albert Thrasher, a brother of the plaintiff, who took possession thereof, and remained in possession until some time in the fall of 1921, when he turned it back to Swant. By a conveyance dated May 8, 1922, Swant conveyed this southeast quarter, together with the water rights appurtenant thereto, to defendant Frank O. Schreiber, the present owner, and on October 12, 1922, Henry W. Schreiber and Swant joined in a conveyance of this land to the defendant, in which conveyance the decreed water rights above mentioned were specifically mentioned and described.

Plaintiff contends that prior to the summer of 1918 the ditch conveying the waters from Gold Creek to and upon said southeast quarter had only been completed to a point on the south side of Blum Creek, for the reason that the owners thereof had been unable to extend it further on account of lack of financial ability, and that about the month of June, 1918, the then owner, Swant, in three separate conversations, solicited him to complete the ditch from its then terminus on the south side of Blum Creek down to the portion of said southeast quarter lying on the north side of the creek, and thence to and upon the plaintiff's lands, so that both the plaintiff and the owner of the southeast quarter could use the ditch for conveying the water to their respective lands; that the plaintiff yielded to these solicitations, and agreed to do so. He further contends that, as a consideration for doing this, Swant agreed to give him an interest in the ditch and water right from Gold Creek. Soon after the last of these conversations, the plaintiff did some work on the ditch, but the point where the same was performed and the amount thereof were not

shown. However, before any considerable amount of work had been done, Swant sold the land to Albert Thrasher, who, as above pointed out, went into the possession thereof in the fall of 1918.

During the time that Albert Thrasher was in possession of the land, by arrangements entered into between him and the plaintiff, the latter furnished materials for the construction of a flume across Blum Creek, and the former built it, and also extended the ditch across the portion of the southeast quarter lying north of Blum Creek, from which place it was extended to and upon the plaintiff's lands lying in the north half of the section. This work was completed about the year 1920, and thereafter, during the time he remained in possession of the southeast quarter, Albert Thrasher used the flume and ditch to convey water to his lands on the northerly side of Blum Creek for irrigation purposes, and the plaintiff also carried water through the ditch and flume to irrigate his lands.

When the defendant took possession of the southeast quarter in the spring of 1922, the plaintiff had a conversation with him, concerning which the latter testified: "Q. Now, what conversation, if any, did you have with Frank O. Schreiber, the defendant in this case, about the time he went into possession of the land there? A. Why, he wanted me to lease it, and he would give me a ten-year lease, or he would do ʼlis and that for me; so I told him just what I have been telling you about Swant. I said, 'Frank, I have done too much work. I have done $600 or $700 worth of work, and I want an interest in this ditch.' He wanted me to lease it. He said he owned the property. Q. Was anything said about the transaction between you and Swant in your conversation with Schreiber?

A. I said, 'Didn't Swant tell you something about it?' He said, 'Well, he said something about it,' but he could do as he pleased about it."

Later on, in 1925, the plaintiff went up to the head of the ditch, apparently at the point where the same was taken out

of Gold Creek, one night, and turned the water in. This precipitated a controversy, and he had a further talk with defendant, about which he testified as follows: "Q. And did you tell him, in that conversation, what you claimed in this ditch? A. Yes. Well, I claimed the lower part. I claimed the flume, and was trying to hold the flume and this Blum Creek part for my money. I wanted him to give me a half interest to Gold Creek, which Swant had promised me if I would even help; and it seemed he didn't want to do it. He told me he had bought it." This conversation occurred in 1925, and it may be noted that it is the only time plaintiff made mention specifically of what he expected to receive from Swant, and is the first time that plaintiff mentioned that he claimed an interest in Gold Creek.

During the years 1922, 1923 and 1924 the plaintiff, at intermittent periods, used water through the ditch and flume, but in 1925, at the time of the above-mentioned controversy, the defendant prevented him from doing so further, whereupon he brought this action to quiet title to an interest in the ditch and water right. Under appropriate pleadings the cause was tried before the court sitting without a jury. The court by general and special findings determined the issues against the plaintiff and in favor of the defendant, and a decree was entered accordingly, from which the plaintiff has appealed.

Although counsel for appellant have made numerous specifications of error, in the first paragraph of their brief they say: "The question turns on whether or not plaintiff has proved ownership in the half interest in the ditch and water right."

Plaintiff's claim to an interest in the ditch and water right is based entirely upon the agreement which he says he made with Swant, and this agreement in turn is based upon the three conversations which he had with Swant. All these conversations occurred in the year 1918. In the first, Swant said to plaintiff: "You better come in with me on the ditch."

Plaintiff made no reply to this suggestion, because, as he said, he was thinking about something else. Some time later Swant met plaintiff on the road, and, according to the plaintiff's testimony, the following took place: "Swant said 'You better come in with me on that ditch,' and I says, 'All right, I will see about it,' and going home over my land I says, 'That will be a good stunt, and it wont cost so much.'"

Plaintiff further testified: "I went up and looked and I seen it wasn't going to cost so much. I thought maybe $300 or $400 would put it across; and he wanted me to help, so he would have to stand half the expense." While the plaintiff was on the ditch that day, at a point where the flume was subsequently built, he saw Swant again, and had the third conversation with him, concerning which he testified: "He came to me then and told me to come in on the thing. Q. And what then did you say or do at that time in that conversation about going in on the ditch? Did you tell him you would or would not? A. I would." Plaintiff testified that he then went to work on the ditch, and two or three days later met Swant near the latter's house, and said to him: "I started on the ditch. He said, 'All right,' and that is all the conversation we had."

In the fall of 1921, when Albert Thrasher surrendered the land to Swant, the latter went up to take possession, and stayed overnight with the plaintiff, and, as he was leaving the following morning, the plaintiff said to him: "You aint going to try to shut me out of that water?" to which defendant replied, "No, you bet I aint."

Plaintiff does not claim to have ever made any appropriation of water from Gold Creek.

Upon these facts the court found that neither the defendant nor any of his predecessors in interest ever agreed with the plaintiff that, if the plaintiff would construct and build, or help to construct and build, a flume or ditch from Gold Creek across to Blum Creek to the lands of the plaintiff and defend-

ant, the plaintiff should have or own a one-half interest in said ditch and the water right connected therewith.

It is the established rule in this jurisdiction that in an equity [1] case the findings of the trial court will not be overturned unless there is a decided preponderance of the evidence against them. (*Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451; *Thomas* v. *Standard Development Co.,* 70 Mont. 156, 224 Pac. 870.) [2] It is equally well established that, in order to constitute either a valid verbal or written agreement, the parties must express themselves in such terms that their intentions can be ascertained to a reasonable degree of certainty. (*Price* v. *Stipek,* 39 Mont. 426, 104 Pac. 195; *Donovan* v. *Bull Mountain Trading Co.,* 60 Mont. 87, 198 Pac. 436.)

Section 7501, Revised Codes of 1921, provides: "Where a contract has but a single object, * * * so vaguely expressed as to be wholly unascertainable, the entire contract is void."

Taking all the statements made by both plaintiff and Swant [3] in the three conversations relied upon by plaintiff to establish the contract by which he was to acquire a half interest in defendant's ditch and water right from Gold Creek, the most that can be made out of them is that the defendant invited the plaintiff to come in on the ditch; that plaintiff consented to do so; that plaintiff did some work on the ditch, but, before he had done a considerable amount, Swant parted with his interest in the land, and did not regain an interest therein until a short time before the defendant come into its possession and ownership. When these facts are coupled with the plaintiff's statement of his claim made to the defendant at the time the latter took possession of the land, to the effect that he (plaintiff) claimed the lower part of the ditch, that he claimed the flume, and was trying to hold the Blum Creek part for the money he had expended, and that he wanted defendant to give him "a half interest in Gold Creek, which Swant had promised," if he would even help, one is led to

inquire whether it would be possible to ascertain with any reasonable degree of certainty what contract or agreement the plaintiff contended was entered into with Swant. Could any person with these meager facts before him prepare a contract which would express the mutual intentions of the plaintiff and Swant, or could the court, from these facts, have formulated a decree which would have declared and enforced their mutual intentions? Manifestly it could not be done. The amount of work which plaintiff was to perform was not mentioned; the interest which he was to receive in the ditch was not disclosed; the ditch in which he was to have an interest, whether the one from Gold Creek to Blum Creek, or the one from Blum Creek on, was not identified; and, if it was intended that he should have an interest in the waters of Gold Creek, it was nowhere so stated.

The plaintiff contends that, when the defendant purchased the land from Swant in 1922, with the ditch existing thereon which extended to and upon the lands of plaintiff, the defendant was charged with notice, and was bound to make inquiry, as to the nature of the right asserted by plaintiff to maintain the same, and, if he did not make this inquiry, he took the land charged with whatever knowledge he could have obtained by pursuing it. Conceding this to be true, still it does not aid the plaintiff, for, if the defendant had gone to the plaintiff, and the latter had stated to him the entire transaction between himself and Swant exactly as he related it at the trial, the defendant would have been justified in disregarding it, since, as heretofore pointed out, it did not operate to give the plaintiff any right in the ditch or water right from Gold Creek.

Reverting to the proposition stated in the first paragraph of appellant's brief to the effect that the determination of this appeal depends upon whether plaintiff proved ownership to a half interest in the ditch and water right mentioned in the complaint, our conclusion is that he did not make such proof,

and it follows that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Mr. Chief Justice Callaway, Associate Justice Matthews and Honorable Theodore Lentz, District Judge, sitting in place of Mr. Justice Holloway, absent on account of illness, concur.

Mr. Justice Galen not sitting.