DAVIS ET AL., APPELLANTS, *v.* CLAXTON ET AL., RESPONDENTS.

(No. 6,320.)

(Submitted June 2, 1928.  Decided June 19, 1928.)

[268 Pac. 787.]

*Assignments — Absolute and Partial — Garnishment by Creditors of Assignor—Interpleader—Equity—Attachment Lies When — Executors and Administrators — Findings — When Controlling on Appeal—Implied Findings—Pleadings—When Deemed Amended to Conform to Proof.*

Attachment—Effect of Death of Defendant as to Release of Attached Property.
1. *Quaere:* Does section 9274, Revised Codes 1921, by providing that the death of a defendant whose property has been attached does not release the attached property and that the attachment may be enforced as in the case of other liens, authorize the enforcement of the attachment lien by execution?

Executors and Administrators — Interpleader — Defendant Prior to Death Disclaiming Interest in Deposit in Court—Claim Against Estate not Necessary.
2. Where money in the hands of a third person had been attached by garnishment and paid into court to await determination of an action interpleading various claimants thereto, the owner of it disclaiming any interest in it, the claimants were not upon the death of the owner required to allege and prove that they had filed with the personal representative of the decedent a claim against the estate, the claimants not seeking to recover anything from the estate.

Appeal in Equity Cases—Findings of Trial Court Controlling, When.
3. On appeal in an equity case the findings of the trial court will not be overturned unless there is a decided preponderance of the evidence against them.

Same—When Doctrine of Implied Findings Inapplicable.
4. Unless a finding, not made by the trial court in an equity case, is necessary to support the judgment it may not, on appeal, be treated as having been impliedly made.

Assignments—Intention of Parties Controlling—To be Gathered from Entire Instrument.
5. As in the case of other contracts, the intention of the parties to a contract of assignment, when ascertained, is controlling and is to be gathered from the entire instrument, looking to its substance rather than its form.

2.  See 11 Cal. Jur. 682; 11 R. C. L. 193.
3.  See 2 Cal. Jur. 919; 2 R. C. L. 203.
4.  See 2 Cal. Jur. 876.
5.  See 3 Cal. Jur. 281; 6 R. C. L. 835, 837.

[82 Mont. 574.]

Same—When Consisting of Several Instruments They must be Considered Together—When Delivery of Assignment Incomplete.

6. Where an assignment consists of several writings, all thereof must be considered together in order to determine the meaning of the parties, and where at the time the assignment, absolute in form, is executed the assignor lodges a further writing with the assignee directing that a portion of the fund assigned be paid to creditors, the two writings are deemed parts of the same instrument and delivery of the assignment to the holder of the fund unaccompanied by the special direction is incomplete.

Same — When Partial and Unaccepted Assignment may Constitute Equitable One to Extent of Claims Secured.

7. While, as a rule of law, an assignment which is but partial and not accepted by the debtor because ignorant of the extent of the assignment, is void as against an attaching creditor, such an assignment may constitute an equitable one to the extent of the claims secured and may be enforced in a court of equity.

Same—Absolute Assignment may in Equity be Held to be in Trust.

8. Though an assignment of a claim be absolute on its face, in a court of equity it may be held to be in trust for the payment of debts for the discharge of which it was given.

Same—Interpleader—Equity—Rights of Defendants will be Enforced.

9. Where a debtor brings a suit in interpleader, on the equity side of the court, against all persons claiming any part or all of the debt assigned by the creditor, the rights of the parties made defendants will be determined and enforced, since the debtor, although he did not expressly promise to pay the assignee, prays in his complaint that the fund be distributed to the defendants according to their rights as between themselves.

Same—Partial Assignment—Garnishment of Remainder Permissible.

10. An assignment of a portion of a claim will not prevent garnishment of the remainder, and where attaching creditors seek to impound the entire fund, and the matter is presented to a court of equity by interpleader, they obtain priority over the assignee only to the part of the fund not assigned, the converse of the rule prevailing in such an action with equal force.

Same—Absolute Assignment not Ground for Finding That Assignee Obtained All Right, Title and Interest of Assignor, When.

11. Under the above rules, *held* in an action in interpleader instituted by a fire insurance company to have determined the rights of the assignee of the sum due under a policy of insurance and of attaching creditors, that a finding of the court that the assignment was absolute in form did not warrant the additional finding that the assignment transferred to the assignee all the right, title and interest of the assignor where it appeared that by a contemporaneous instrument the assignor had directed the assignee to pay a portion of the fund to certain of his creditors.

---

6. See 6 Cal. Jur. 298; 6 R. C. L. 850.

7. Assignment of part of a demand or fund, to what extent enforceable, see notes in 2 Am. St. Rep. 472; 28 Am. St. Rep. 744. See, also, 3 Cal. Jur. 274; 2 R. C. L. 618. Partial assignment of claim or demand founded on contract, see note in Ann. Cas. 1912A, 673.

8. See 2 R. C. L. 619.

9. See 3 Cal. Jur. 275.

10. See 3 Cal. Jur. 285.

Attachment—Lies When.

12. The test whether attachment (or garnishment) will lie is whether the debtor in the attachment suit could have sued to recover the property against which the attachment is directed.

Same—"Credits"—Definition.

12a. The "credits" referred to in subdivision 5 of section 9262, Revised Codes 1921, providing the manner in which debts, credits and personal property not capable of manual delivery must be attached, are something belonging to the defendant but in possession and under the control of the garnishee, such as promissory notes or other evidences of indebtedness which may be delivered to the sheriff.

Same — When Holding of Court That Service was Made on Wrong Party Untenable.

13. Where the holder of a fire insurance policy by an instrument absolute in form assigned the amount due thereon to his attorney, directing him, however, by a separate writing, to pay certain of his creditors designated amounts, and before presentation of the assignment other creditors served notices of garnishment upon the company which thereupon instituted an action in interpleader, paying the amount of the policy into court, holding of the court that the attaching creditors should have served notices of garnishment upon the assignee instead of the insurance company and that by service upon the latter they acquired no lien upon any part of the fund was error.

Same—Interpleader—Attorney as Assignee Claiming All of Fund Assigned as Fee—Attaching Claimants Denying Reasonableness of Fee—Failure of Court to Decide Issue Error.

14. In an action in interpleader to determine the rights of attaching creditors and of an attorney to funds in the hands of a fire insurance company which had been assigned by the insured to the attorney, who then had not performed any services to the assignor but who under the assignment was to retain, after the payment of certain debts, such sum as might be due him for fees, wherein the attorney alleged that his services were worth $1,500 and the creditors averred that they were worth only $150, the court erred in not deciding the issue thus directly raised as to the reasonable value of the attorney's services.

Pleadings Deemed Amended to Conform to Proof, When.

15. Where evidence is admitted without objection as to a matter not alleged, the pleadings will be deemed amended to conform thereto.

---

[1] Attachment, 6 C. J., sec. 534, p. 280, n. 53.
[2] Executors and Administrators, 24 C. J., sec. 937, p. 317, n. 19.
[3] Appeal and Error, 4 C. J., sec. 2869, p. 900, n. 96.
[4] Appeal and Error, 4 C. J., sec. 2728, p. 779, n. 86.
[5-10] Assignments, 5 C. J., sec. 60, p. 895, n. 15, 16; sec. 76, p. 907, n. 8; sec. 80, p. 915, n. 40; sec. 86, p. 927, n. 87; sec. 116, p. 943, n. 46; sec. 118, p. 944, n. 53; sec. 124, p. 950, n. 2. Attachment, 6 C. J., sec. 553, p. 292, n. 65. Garnishment, 28 C. J., sec. 146, p. 107, n. 53.
[11] Interpleader, 33 C. J., sec. 56, p. 464, n. 27.
[12, 13] Attachment, 6 C. J., sec. 350, p. 193, n. 69. Fire Insurance, 26 C. J., sec. 596, p. 445, n. 17. Garnishment, 28 C. J., sec. 132, p. 102, n. 78; sec. 204, p. 164, n. 55; sec. 350, p. 253, n. 33.
[14] Interpleader, 33 C. J., sec. 52, p. 462, n. 62.
[15] Pleading, 31 Cyc., p. 755, n. 70.

[82 Mont. 574.]

*Appeal from District Court, Silver Bow County; George Bourquin, Judge.*

ACTION by certain insurance companies interpleading Andrew J. Davis, Daniel N. Dellinger, I. Mattingly and John K. Claxton. The insurance companies were awarded their costs and attorneys' fees, and permitted to withdraw from the action. Davis and Dellinger became plaintiffs and Claxton and the administratrix of the estate of I. Mattingly the defendants. From a judgment in favor of defendant Claxton the plaintiffs appeal. Reversed and remanded for new trial.

*Mr. J. A. Poore,* for Appellants, submitted an original and a reply brief and argued the cause orally.

*Mr. A. C. McDaniel* and *Mr. John K. Claxton,* for Respondents, submitted a brief and argued the cause orally.

No question can be raised as to the sufficiency of the assignments in question. The insurance companies raised none. They took the assignments without question, and the complaint which they filed shows that they regarded the assignments as sufficient. Further, the evidence shows that the insurance companies were ready to pay Claxton. What is sufficient between the parties to a transaction is sufficient as to all others. The matter was personal between the insurance companies and Mattingly, and no stranger to the assignments can interfere or attack their validity or sufficiency. (*St. Onge* v. *Blakely,* 76 Mont. 1, 13, 245 Pac. 532.) The assignments need not have been in writing; an oral assignment is sufficient. (*Oppenheimer* v. *First Nat. Bank,* 20 Mont. 192, 50 Pac. 419; *Genzberger* v. *Adams,* 62 Mont. 430, 205 Pac. 658.)

The acceptance by the person holding the money of an assignment is not necessary to make the assignment good as between the assignor and assignee; the assignment is good as soon as made. The only purpose of giving notice of the assignment or of delivering the assignment is to prevent the

debtor from paying to one other than the assignee. (*Oppenheimer* v. *First Nat. Bank,* supra; *Merchants & Miners' Nat. Bank* v. *Barnes,* 18 Mont. 335, 56 Am. St. Rep. 586, 47 L. R. A. 737, 45 Pac. 218; *Walton* v. *Horkan,* 112 Ga. 814, 81 Am. St. Rep. 77, 38 S. E. 105.)

The assignment of money has priority over an attachment. (*Oppenheimer* v. *First Nat. Bank,* supra; *Merchants & Miners' Nat. Bank* v. *Barnes,* supra; *Rich* v. *Roberts,* 103 Kan. 116, 172 Pac. 996; *Wilson Hardware Co.* v. *Duff,* 54 Tex. Civ. App. 285, 117 S. W. 440; *Harrison* v. *L. & N. R. Co.,* 120 Ala. 42, 23 South. 790; *Walton* v. *Horkan,* 112 Ga. 814, 81 Am. St. Rep. 77, 38 S. E. 105; *Widenmann* v. *Weniger,* 164 Cal. 667, 130 Pac. 421; *McIntyre* v. *Hauser,* 131 Cal. 11, 63 Pac. 69; *Bank of Hinton* v. *Swan,* 156 Iowa, 715, 137 N. W. 1032; *Ginochio* v. *Amador Canal & Min. Co.,* 67 Cal. 493, 8 Pac. 29; *Sintes* v. *Commerford,* 112 La. 706, 36 South. 656; *Liddle* v. *Hernandez,* 72 Colo. 585, 212 Pac. 821.)

The law is well settled that only such debts or money demands can be reached by garnishment as the defendant himself might recover in an appropriate action of debt in his own name. An examination of the assignments in question reveals that the assignments were absolute and complete. Mattingly assigned all his right, title and interest and nothing remained in the way of an indebtedness from the insurance companies to him, nor had he a claim in any form against the insurance companies. He could not under any circumstances after the execution and delivery of the assignments maintain an action against the insurance companies. The assignments would have been a complete defense. Therefore, the insurance companies were not indebted to Mattingly in any sum, and there was nothing in their hands, or either of them, upon which attachments could be levied. (*American Trust Co.* v. *O'Barr,* 12 Ala. App. 546, 67 South. 794; *What Cheer Sav. Bank* v. *Mowery,* 149 Iowa, 114, 128 N. W. 7; *Clay Lumber Co.* v. *Hart's Branch Coal Co.,* 174 Mich. 613, 140 N. W. 912;

*Smyth* v. *Boroff,* 156 Mo. App. 18, 135 S. W. 973; *Shortridge* v. *Sturdivant,* 32 N. D. 154, 155 N. W. 20; *Scheuerman* v. *Mathison,* 74 Or. 40, 144 Pac. 1177; *La Barre* v. *Doney,* 53 Pa. Super. Ct. 435; *Hall* v. *Nunn Electric Co.* (Tex.), 183 S. W. 13; *Barkley* v. *Kerfoot,* 77 Wash. 556, 137 Pac. 1046; *Liddle* v. *Hernandez,* 72 Colo. 585, 212 Pac. 821; *Sintes* v. *Commerford,* 112 La. 706, 36 South. 656; *Walton* v. *Horkan,* 112 Ga. 814, 81 Am. St. Rep. 77, 38 S. E. 105; *Bank of Hinton* v. *Swan,* 156 Iowa, 715, 137 N. W. 1032; *Title Ins. Co.* v. *Williamson,* 18 Cal. App. 324, 123 Pac. 245, 247.)

It is argued by the appellants that because, at the time the attachments were served, the insurance companies held the money and Claxton never at any time had possession of any of the money, no title or right had passed to Claxton, except a sum in the approximate amount of $600, and that the balance of the amount of $4,000 remained the property, in the hands of the insurance companies, of Mattingly. The respondents maintain that while there was no actual delivery of the cash, yet there was a symbolical delivery in that Mattingly delivered to Claxton the representatives of the cash—the assignments—and these orders or assignments vested Claxton with the right to the money as effectually as though the insurance companies had parted with the money. This seems to be the underlying principle of the case of *Oppenheimer* v. *First National Bank,* supra, and if this is not the principle, there seems no logical reason for the decision. The assignments worked a complete change of ownership. (*Appeal of Colburn,* 74 Conn. 463, 92 Am. St. Rep. 231, 51 Atl. 139.) The delivery of the assignments was a delivery of the money,—debt owing by insurance companies to Mattingly. (*Northwestern M. I. I. Co.* v. *Wright,* 153 Wis. 252, Ann. Cas. 1914D, 697, 140 N. W. 1078; *Tatum* v. *Ballard,* 94 Va. 370, 26 S. E. 871; *Appeal of Colburn,* 74 Conn. 463, 92 Am. St. Rep. 231, 51 Atl. 139; *Belden* v. *Farmers & Mechanics' Bank,* 16 Cal. App. 452, 118 Pac. 449.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal by Andrew J. Davis and Daniel N. Dellinger, plaintiffs, from a judgment in favor of the defendant John K. Claxton, in an action wherein certain insurance companies required the parties hereto to set up their respective claims to $4,000 deposited in court.

The record discloses the following facts: On December 27, 1925, a stock of goods belonging to I. Mattingly, a Butte merchant, was partially destroyed by fire; the loss was in excess of $8,000, partially covered by three policies of insurance aggregating $4,000. Two days after the fire, Mattingly made an assignment of each of the policies to John K. Claxton, an attorney at law. These assignments are absolute on their face. At the same time Mattingly gave to Claxton written direction to pay certain claims totalling approximately $600 "from the amount received" from the insurance companies, and to "retain from said sum any amount that may be due you for fees and services rendered me." At that time Claxton had not acted, and was not acting, as attorney for Mattingly. Mattingly was then indebted to both Davis and Dellinger, as well as to numerous other persons and firms, and Dellinger had already commenced an action in debt against him.

On December 31, 1925, certain of Mattingly's creditors filed a petition in bankruptcy in the federal court, charging that the assignments to Claxton, "representing one or more" of the creditors of Mattingly, "with intent to prefer such creditors over his other creditors," constituted an act of bankruptcy. To this petition Mattingly filed an answer, verified before Claxton, who appeared as his attorney in the proceeding, in which it is alleged that the assignments were made for the purpose of paying merchandise accounts held by Claxton for collection, "with the specific understanding and agreement that any surplus" be paid to Mattingly, and that Mat-

tingly "has an equity and interest in said insurance policies" of approximately $3,500.

The hearing on the petition was held May 18, 1926, and therein Mattingly testified that his equity and interest in the insurance money amounted to $3,200, and this testimony was quoted by Claxton in a brief filed on that date, in support of his contention that the proceeding should be dismissed.

Mattingly thereafter gave Claxton further written direction to pay additional claims against him from the insurance money when received, totalling approximately $900, and included in these instructions: "You are also instructed to deduct and pay yourself any and all attorney fees that may be due you for services rendered me in the bankruptcy proceedings, in the matter of the adjustment of said fire insurance losses, case of Dellinger * * * and any other charges which you have against me." These directions were contained in a letter dated May 18, 1926, and Claxton testified herein that it was received by him on that date.

On May 20, 1926, on the showing made, the federal court dismissed the proceeding, and immediately thereafter Dellinger caused a writ of attachment to issue in his pending action, and Davis commenced action, and also caused such a writ to issue; these writs and notices of garnishment were served upon the insurance companies on May 21. At some time thereafter Claxton notified the insurance companies that he claimed the entire amount, and on October 14, 1926, the insurance companies commenced this action interpleading Davis and Dellinger and Mattingly and Claxton, and requiring them to set forth their claims to the money in the hands of the companies. By stipulation of all the parties, the $4,000 was deposited in court to await the court's determination of the rights of the parties.

Mattingly and Claxton filed a joint answer in which, in addition to setting up the assignments and the two written directions given Claxton, they alleged that Claxton's services were reasonably worth $1,500, and that on May 20 Claxton

made a full settlement with Mattingly by paying him the sum of $500. Thus Mattingly disclaimed any interest in the amount deposited, and Claxton claimed the whole thereof, alleging that, in addition to receiving $1,500 for his services as attorney for Mattingly, he had settled with the latter for approximately $1,000 in cash, by the payment of $500 in cash.

Davis and Dellinger answered, denying that Claxton's services were reasonably worth to exceed $150, and denying the allegations of settlement; they alleged that the assignments were given to secure the payment of not to exceed $600, and that they were entitled to the balance of the money deposited, by virtue of their attachments and judgments, subsequently entered by consent, in their pending actions for sums far in excess of that balance.

Mattingly thereafter died, and his personal representative was substituted as a party defendant and adopted his answer on file.

Issue being joined between the parties in interest, the insurance companies were awarded their costs and attorney fees, amounting to $212.90, and permitted to withdraw from the action; Davis and Dellinger became the plaintiffs herein, and Claxton and the administratrix of the Mattingly estate the defendants. The cause was then tried to the court sitting without a jury, in September, 1927.

On the trial Claxton introduced the three assignments as Exhibits 1, 2 and 3 and the direction given simultaneously with them as Exhibit 4. He then introduced the direction of date May 18, as Exhibit 5, and his receipt from Mattingly on the alleged settlement as Exhibit 6. Claxton testified that, on the settlement with Mattingly, he paid the latter $400 in cash, and gave him his note for $100, which note was paid by check on March 4, 1927. The receipt recites that Mattingly received $500 in full settlement of the insurance policies, and that it is given for the purpose of making the assignments of December 29, 1925, "absolute and complete." It is dated May 20, 1926, and Claxton testified that it was signed and

delivered to him on that date. The figures "1926" are typed over an erasure, and, as late as January 12, 1927, Mattingly was still seeking a settlement with Davis and Dellinger from which he would receive some portion of the insurance money, and Claxton, in discussing settlement with counsel for plaintiffs, complained that, if $3,200 of the insurance money was turned over to plaintiffs, he did not see from whence he was to be paid his attorney fees due from Mattingly. Asked why he had not made an arrangement therefor in advance, he replied that a man's hindsight is better than his foresight.

On this showing counsel for plaintiffs contended that both Exhibits 5 and 6 were afterthoughts, drawn and delivered subsequent to January 12, 1927, for the purpose of defrauding these plaintiffs.

On cross-examination Claxton admitted that, originally, the assignments "transferred $600," and "the balance of the property was Mattingly's."

In October, 1927, the court made and filed its findings of fact and conclusions of law. Therefrom it clearly appears that the court did not base its decision upon findings in favor of Claxton upon his theory that he became entitled to the entire fund by settlement with Mattingly before service of the writs, but upon the narrow ground that the assignments made were absolute, and conveyed to Claxton the title to the amounts due from the companies, and that Mattingly thereafter had a credit in the hands of Claxton, and not in the hands of the insurance companies, so that the service upon the companies did not reach the funds; in other words, that Davis and Dellinger did not serve the proper party with notice of garnishment, and did not, therefore, impound the money due Mattingly at the time of service.

Plaintiffs filed written objections to many of the findings and conclusions made, and a hearing was had early in 1928, after which the objections were overruled, and judgment was entered in accordance with the conclusions reached by the court.

On appeal, plaintiffs have specified error upon the findings and conclusions to which objection was made and upon the court's refusal to make certain tendered findings, and upon the entry of judgment in favor of Claxton, the nature of which will sufficiently appear as we consider the points raised in the briefs and argument of counsel.

1. Preliminary to a discussion of the merits, Claxton con[1] tends that, without considering the proof adduced, the judgment must be affirmed, as the Davis and Dellinger cross-complaint does not state facts sufficient to constitute a cause of action, in that it appears therefrom that no claim was filed with the Mattingly estate. He relies upon section 10186, Revised Codes of 1921, which declares that "a judgment against the decedent for the recovery of money must be presented to the executor or administrator like any other claim," and insists that the provisions of section 9422, Id., prohibit the issuance of execution after the death of a judgment debtor in any case other than as therein mentioned.

Section 9422 provides that "notwithstanding the death of a party after the judgment, execution thereon may be issued, or it may be enforced as follows: (1) * * * Upon the application of his * * * administrator, or * * * (2) * * * if the judgment be for the recovery of real or personal property, or the enforcement of a lien thereon," etc. While this court has never been called upon to pass upon the question, in other states having similar statutory provisions it is held that the lien acquired by attachment in aid of a mere money judgment does not authorize the issuance of an execution after the death of the judgment debtor, as such a judgment is not one for the "enforcement of a lien" within the meaning of the section. (*Rose* v. *Dunbar,* 20 Idaho, 1, Ann. Cas. 1912D, 1046, 115 Pac. 920, citing *Myers* v. *Mott,* 29 Cal. 359, 89 Am. Dec. 49, and *Yankton Savings Bank* v. *Gutterson,* 15 S. D. 486, 90 N. W. 144; *Weaver* v. *Pickard,* 7 Utah, 296, 26 Pac. 581.)

We have a further statute on the subject which provides that "the death of the defendant does not release the attached property, and a lien of the attachment may be enforced as in the case of other liens" (sec. 9274, Rev. Codes 1921), which may indicate a legislative intent that, in this state, the attachment lien may be enforced by execution; however, we are not [2] now called upon to determine whether section 9274 has that effect or not, as the case presented does not rest upon the validity of executions issued, since, during his lifetime and by his answer herein, Mattingly disclaimed any interest in the fund, and stipulated with all other parties to the action that, without service of writ of execution, this fund should be deposited in court to await the outcome of the interpleader action, and on the issues framed this action became merely a contest as to whether the defendant Claxton should receive the entire amount deposited, or these plaintiffs should be permitted to share therein. Mattingly was eliminated from participation in a division of the fund, and his administratrix adopted his answer. Herein the estate is not claiming any interest in the money on deposit, and these plaintiffs are not seeking to recover anything from the estate; under these circumstances, it was not necessary that plaintiffs allege or prove the filing of a claim in the estate matter. (11 Cal. Jur. 682.)

2. Counsel for Claxton assert that, this being an equity case, [3] the findings of the trial court will not be overturned, unless there is a decided preponderance of the evidence against those findings, citing *Thrasher* v. *Schreiber*, 77 Mont. 221, 250 Pac. 600, and *Gravelin* v. *Porier*, 77 Mont. 260, 250 Pac. 823. Such is the rule, and it will be applied in reviewing the evidence and considering the specifications of error made by plaintiffs.

3. The first finding attacked is finding No. 2, to the effect that the assignments made transferred to Claxton all of Mattingly's "right, title, interest, claim, and demand" against the insurance companies and the moneys due therefrom, and that, "contemporaneously" with their execution, it was understood

and agreed between Mattingly and Claxton that, upon receipt of the money, the latter would pay certain creditors of the former, and, after retaining an attorney fee, would pay the balance over to Mattingly. It then declares that Exhibits 4 and 5 were executed and delivered by Mattingly to Claxton "pursuant to such agreement and understanding."

Taking up the last clause first, there is no evidence in the record to warrant the finding that Exhibit 5, as well as Exhibit 4, was executed and delivered pursuant to an agreement between the parties at the time the assignments were made. All of the evidence concerning what transpired on December 29, 1925, is to the effect that at that time Mattingly but agreed to assign the insurance money to Claxton for the purpose of insuring the payment of the claims then held by Claxton against him, and that those claims were all listed in Exhibit 4, and that it was only after the hearing in the bankruptcy proceeding on May 18, 1926, that any mention was made of the additional claims listed in Exhibit 5. The testimony of Claxton shows that some of these latter claims were received by him for collection some time after the assignments were made, and others were first mentioned to him by Mattingly when he directed their payment.

Plaintiffs assign error upon the finding—suggested as incorporated in the above finding No. 2—that Exhibit 5 was executed and delivered on May 18, but a careful reading of the declaration of the court discloses that no such finding was made.

If, in fact, that exhibit was executed and delivered on May 18, the court's error in according the same treatment to the two directions given would be harmless, as both would ante- [4] date the service of the notices of garnishment on the insurance companies; but the court did not so find, and we cannot imply a finding to that effect, as no such finding is necessary to support the judgment under the theory on which the court decided in favor of Claxton as outlined above.

[82 Mont. 574.]

By finding No. 6 the court declared that Exhibit No. 6, the receipt which Claxton contended shows that he made full settlement with Mattingly, or purchased from him all that he had coming from the insurance companies for $500 on May 20, "was not executed and delivered until some time subsequent to May 21, 1926, and that on May 21, 1926, Mattingly was the owner of a credit under the control of the said Claxton," and in its conclusions of law the court again declared that "by the uncontradicted testimony in the record it appears that the execution of Exhibit 6 was at a time other than it bears. Its existence on that day is refuted by the uncontradicted testimony showing the conduct of Claxton and Mattingly during the overtures of settlement in January, 1927. * * * ''

As the testimony referred to concerned the amount coming to Mattingly as well as matters referred to by the court above, we cannot say that the court would have held, on the evidence before it, that Exhibit 5 was executed and delivered prior to May 21, 1926, nor will we, on the cold record, undertake to determine the question which we consider necessary to a full determination of this cause on our conclusions hereinafter reached.

As to that portion of Finding No. 2 which, in effect, declares that the assignments were absolute, and transferred to Claxton all of the right, title and interest of Mattingly in the money to be received from the insurance companies, it is true that those assignments were absolute on their faces, and might have had that effect, if nothing further had been done; but, simultaneously with those assignments, Exhibit 4 was executed, and therefrom the intention of the parties clearly appears. By that instrument, a part of the same transaction, Mattingly directed Claxton to retain and pay over to his clients a sum not exceeding $600, and to retain such an amount as might be due him for professional services. Claxton did not show that he then had any fees coming to him from Mattingly, and in the bankruptcy proceedings Mattingly and Claxton showed to

the federal court that Mattingly's interest in the insurance money amounted to $3,400 at the time the proceedings were commenced, and, after the date of the direction, and as late as May 18, 1926, showed to the court that Mattingly had an equity in those moneys amounting to $3,200.

As in the case of other contracts, the intention of the par-[5–10] ties, when ascertained, is controlling, and is to be gathered from the entire instrument, looking to its substance rather than its form. (*Ferry & Co.* v. *Forquer,* 61 Mont. 336, 29 A. L. R. 642, 202 Pac. 193; 5 C. J. 949.)

When an assignment consists of several writings, all such writings should be considered together in order to determine the meaning of the parties (5 C. J. 944), and where, as here, the parties simultaneously execute an assignment and a further instrument setting forth the purpose of the assignment, the writings are deemed but parts of the same instrument, and will be construed together. (*Parks* v. *Comstock,* 59 Barb. (N. Y.) 16.)

Now, as the direction given Claxton simultaneously with the delivery of the assignments was a part of those instruments, when Claxton delivered his assignments to the insurance companies without delivering the direction also, the delivery of the assignments was incomplete.

Plaintiffs contend that, as the assignments were in fact but partial, and not accepted by the companies as such, as they were not informed of their purpose or extent, they were void as against the attaching creditors. This is true as a rule of law, but an assignment of a part of a fund or debt may constitute an equitable assignment to the extent of the claims secured, and may be enforced in a court of equity. (*Western etc. Ry. Co.* v. *Union Inv. Co.,* 128 Ga. 74, 57 S. E. 100; *Provident National Bank* v. *Hartnett,* 100 Tex. 214, 97 S. W. 689; *Van Riper* v. *Baldwin,* 19 Hun (N. Y.), 344; *Goldman* v. *Murray,* 164 Cal. 419, 129 Pac. 462; 3 Cal. Jur. 274.) On the other hand, although such an assignment be absolute on its face, in a court of equity, it may be held to be in trust for

the payment of those debts for the discharge of which it was given, and to the extent that the assignee becomes the equitable owner of the fund. (*Protzman's Exr.* v. *Joseph,* 65 W. Va. 788, 65 S. E. 461; *Hanchey* v. *Hurley,* 129 Ala. 306, 30 South. 742.)

The rule against partial assignments prevailing in courts of law was established for the protection of the debtor, and, if the debtor brings a bill of interpleader in a court of equity, or on the equitable side of the court, against all persons claiming any part or all of the debt or fund, the rights of the parties made defendants· therein will be determined and enforced because the debtor, although he did not expressly promise to pay the assignee, yet asks that the fund be distributed to the different defendants according to their rights as between themselves. (*James* v. *Newton,* 142 Mass. 366, 56 Am. Rep. 692, 8 N. E. 122.)

An assignment of a portion of a claim will not prevent garnishment of the remainder. (28 C. J. 107, note 53.)

If, in fact, the assignments were but partial and were not accepted by the companies, while in law they had no efficacy, and the attaching creditors would impound the entire fund, where the matter is presented to a court of equity by interpleader, such attaching creditors obtain a priority over the assignee only to the part of the fund not assigned. (5 C. J. 896, note, citing *Kiddo* v. *Ames,* 73 Mo. App. 667.) The converse of this equitable rule should prevail in such an action with equal force.

It is therefore apparent that as the parties were interpleaded [11] in an equitable action (sec. 9087, Rev. Codes 1921; *Anderson* v. *Red Metal Min. Co.,* 36 Mont. 312, 93 Pac. 44), and stipulated that the rights of each to or in the fund deposited in court should be determined by the court the mere finding that the assignments were absolute in form did not warrant the finding that those assignments transferred to Claxton "all the right, title, interest, claim and demand" of Mattingly. Indeed the finding is contradicted ·by subsequent

findings to the effect that Mattingly had a credit in the hands of Claxton at the time the writs were served.

3. The court concluded as a matter of law that at the time [12, 13] the notices of garnishment were served the insurance companies had nothing in their hands which Mattingly could have recovered, and that, as the credit belonging to Mattingly and in the hands of Claxton, could have been reached by garnishment of Claxton under subdivision 5 of section 9262, Revised Codes of 1921, the service upon the insurance companies did not secure a lien upon any part of the fund deposited in court. By proper specification the plaintiffs challenge the correctness of this conclusion.

In support of the conclusion, Claxton contends that the assignments were absolute, and nothing remained as an indebtedness from the companies to Mattingly, who could not have maintained an action against the companies thereafter, and there was nothing in their hands reached by the attachments. He contends that, at any time after the assignments were delivered to the companies they could have paid the full amount of the claims to him, and been acquitted of all liability. This is probably so with reference to the assignments delivered, and in the absence of notice to the companies of the actual purport of those assignments, but, before the companies had acted in the matter, the plaintiffs notified them that the assignments covered but approximately $600 and that the balance was still the property of Mattingly. The actual property of Mattingly was still in the hands of the companies, and under their control. Claxton could not take it into his possession at will, and might have been forced to sue for its recovery. He held under his control, not the property, but a mere chose in action.

It is true that the usual test as to whether attachment will lie is as to whether the debtor in the attachment suit could have sued to recover the property against which the attachment is directed and, of course, if the attachments were absolute, Mattingly could not have maintained an action against

the insurance companies, but, under the facts disclosed, had Mattingly become dissatisfied with the arrangement he had made with Claxton for the payment of certain of his creditors, while he could not have revoked the assignments in so far as they accomplished the purpose intended by the parties, he could undoubtedly have given to the companies such notice as these attaching creditors gave, and thereafter, if necessary, have maintained an action against those companies for the balance due him under the policies without permitting that amount to go through Claxton's hands, and a showing by Claxton that he held assignments to the extent of the claims held by him would not have prevented such a recovery under the rules above announced.

The court erred in its conclusion that plaintiffs proceeded against the wrong party in the garnishment matter.

Section 9256, Revised Codes 1921, declares that the plaintiff in a proper action may "have the property of the defendant attached," and section 9262, subdivision 5, provides that "debts or credits and personal property, not capable of manual delivery, and personal property in the possession of a third person, must be attached by leaving with the person owing such debt, or having in his possession or under his control such credits and personal property,  *  *  *  a notice that the debts owing by him to the defendant, or the credits and other personal property in his possession, or under his control, belonging to the defendant, are attached." The "credits" mentioned in the statute "are something belonging to the defendant, but in the possession and under the control of the garnishee, like promissory notes or other evidences of indebtedness of third parties, which may be delivered up or transferred to the sheriff." (*Robinson* v. *Tevis*, 38 Cal. 614; *Gow* v. *Marshall*, 90 Cal. 565, 27 Pac. 422.)

The possession or control over credits which will justify garnishment must be present and such that the garnishee could forthwith turn it into court in order to avoid liability, or that the property in his possession might be seized and sold at that

time on execution; it must be such that the defendant in the action could then have maintained an action against him for its recovery. (Drake on Attachment, 7th ed., secs. 463 and 480, and cases cited.)

Had service been made on Claxton, he could not have been required to answer as to his liability to Mattingly at the time of the .service of the garnishment. (*Norris* v. *Burgoyne*, 4 Cal. 409.)

The balance of the insurance money was property of Mattingly; it had not come into the possession of Claxton, nor yet so under his control that it could have been seized in his hands and sold under execution; he could not have turned it into court; and, as he had not yet been paid, he was not liable to Mattingly on his contract to pay the amount over after making proper deductions, and could not have been sued by Mattingly on his contract.

In garnishing the insurance companies, the plaintiffs took the only step by which the money could be impounded for the satisfaction of their judgments to be thereafter recovered. By that process the plaintffs acquired a lien upon any part of the insurance money belonging to Mattingly at the time of service, and were entitled to participate in the distribution of the fund deposited in court to the extent that their interest appeared on the trial.

The court should have first determined whether Exhibit 5 was executed and delivered prior to May 21, 1926, and, if it found that the exhibit was so delivered, should have then determined the amount Claxton was entitled to receive in addition to the total amount of the claims for which the assignments were originally made.

4. Claxton contends that his attorney fees are not in issue; [14] this would be so, had the court found that he arrived at a settlement with Mattingly prior to service of the notices of garnishment, but the court found to the contrary. It will be noted that he alleged that his services "were and are reason-

ably worth the sum of $1,500,'' thus declaring on *quantum meruit,* while the plaintiffs by their reply denied that those services were worth to exceed $150. Issue was thus directly raised, and should have been determined by the court.

5. The court closed its conclusions of law with the significant statement: ''While the transaction appears tainted, fraud and [15] champerty are not alleged; were they, the findings and conclusions herein might be different.''

Counsel for plaintiffs insist that, as all of the testimony on which the court based its statement was received without objection, the issues should not have been determined in favor of plaintiffs on the ground that the complaint is deemed amended to conform to the proof, and, if either champerty or fraud appeared, Claxton could not recover. It is well settled that, where evidence is admitted without objection, the pleadings are deemed amended to conform thereto.

For the reasons stated, the judgment is reversed and the cause remanded to the district court of Silver Bow county for a new trial.

*Reversed and remanded.*

Mr. Chief Justice Callaway and Associate Justices Myers, Stark and Galen concur.

Rehearing denied June 30, 1928.