PRES'T., &c. FRANKLIN BANK *versus* GEORGE W. BACHELDER.

If the creditor has recovered judgment in a trustee process against his debtor, and against the trustee for the goods, effects and credits of the principal in his hands, and has taken out execution, and a demand has been made thereof of the trustee by the proper officer in due season, and he has refused to deliver up the same; and afterwards the original debtor files his petition in bankruptcy and obtains his discharge as a bankrupt under the late law of the United States on that subject; such discharge furnishes no valid defence to a *scire facias* to recover of the trustee the value of the goods, effects and credits of the principal in his hands.

THE plaintiffs brought this writ of *scire facias* for the purpose of obtaining a judgment and execution against the defendant for the amount of a judgment recovered by them against Elwell & Pray, and against the goods, effects and credits of the debtors in the hands of the defendant.

On March 7, 1835, the plaintiffs brought an action against Elwell & Pray in the Court of Common Pleas, and summoned Bachelder as trustee. He came into Court, and before judgment was finally rendered, made several disclosures, from which it appeared that he had effects of the debtors in his hands as assignee of Elwell & Pray. On Jan. 17, 1842, at an adjourned term of the Supreme Judicial Court, the plaintiffs recovered judgment against Elwell & Pray for $942,81, and against Bachelder as their trustee. The plaintiffs took out their execution and delivered it to an officer, who by virtue thereof, on Feb. 10, 1842, made a demand of Bachelder to

deliver up the goods, effects and credits of Elwell & Pray in his hands, and made return thereof, and that Bachelder refused to expose, discover and deliver the same, and that the execution was wholly unsatisfied. The present process was commenced on May 6, 1842.

Elwell & Pray, on Feb. 15, 1842, severally filed their petitions in bankruptcy. On March 16, 1842, they were declared judicially to be bankrupts; and they received their respective certificates of discharge on August 2, 1842. The defendant pleaded the bankruptcy of the judgment debtors, Elwell & Pray, in discharge of this suit; the plaintiffs replied thereto, setting forth the previous proceedings; and the defendant demurred.

Very able written arguments were furnished to the Court by the respective counsel. They are too much extended for publication. The amount of the judgment to be rendered against the defendant, if the decision should be against him, was one of the questions discussed. No notice of this will be taken, as there is no decision in relation thereto.

*Emmons,* for the defendant, contended that by the decree of bankruptcy and the appointment of assignees, the law vested the property, which Elwell & Pray had entrusted with the defendant, in the respective assignees. By their certificates of discharge, the debt of the plaintiffs against Elwell & Pray became so defunct, as that it could never, without a new promise, be enforced against them, by any new process. U. S. Bankrupt act of 1841, § 4. The basis of this action against the present defendant, is the debt and judgment of the plaintiffs against Elwell & Pray. If that cannot, by a new process, acquire legal vitality, it is difficult to perceive, how this *scire facias* can be sustained against the defendant.

If the lien created by an original attachment of property be admitted to have become vested by judgment against the principals, yet the property in the hands of the trustee was incapable of being rendered productive to the plaintiffs against the defendant. The demand for the property having been fruitless, the lien as to its value has become incapable of being

enforced. Upon the appointment of assignees, all the property of Elwell & Pray in the hands of the defendant became vested in their respective assignees. To enforce their claim, the plaintiffs have brought this suit, and insist that their lien was perfected by the demand on the defendant of Feb. 10, 1842. The defendant contends that this will not avail them. The Bankrupt law, and the opinion of Story J. in *ex parte Foster*, Law Reporter, Vol. 5, 56, were cited, and comments made upon them. The case of *Cook,* Law Reporter, Vol. 5, 443, before the same Judge, was also cited with comments. When a judgment is rendered, a lien by attachment of lands or goods may be enforced without any new process. But in case of a foreign attachment, the remedy demands a fresh process, and therefore does not come within the principles laid down by the learned Judge with respect to lands or goods attached on mesne process. The attempt here is to enforce a lien against the trustee by an action, and he has therefore a day in Court to plead any proper bar or defence. And in the words of the same learned Judge, in the case of *Foster,* " a foreign attachment is a remedy liable to be defeated by any act, that bars or takes away the remedy, or-right to judgment under it."

There is nothing in the case of *Cook,* which denies the right of the principal to plead his bankruptcy, if he had the means of-doing so. But it is too late for him after final judgment. He has no day in Court. · Here ·the opportunity of pleading the bankruptcy remains, and the defendant has properly availed himself of it.

*F. Allen* and *Evans* argued for the plaintiffs. They said, that the principal question in this case was:—Whether the discharge under the bankrupt law, not of this defendant, but of Elwell & Pray, judgment debtors in a former suit, upon proceedings commenced subsequent to the rendition of that judgment, shall bar the plaintiffs of their right to recover of this defendant the amount which may be found to be in his hands as trustee; judgment also having been obtained against him in that capacity, execution having issued on .that judgment,

and a demand having been made upon him in due season; and all prior to the commencement of the proceedings in bankruptcy, by virtue of which the discharge was finally obtained.

This constitutes a perfect lien, under the bankrupt law of the United States. They cited and commented upon the decisions of STORY J., Law Reporter, Vol. 5, 357. Of CONKLING J. same Vol. 362. Of PRENTISS J. same, 392. And of STORY J. in the matter of *Cook*, same Vol. 443. It is not legal liens only, but equitable liens also, which are protected by the act. Law Reporter, Vol. 5, 357.

The lien in this case is as perfect, as it would have been, had it been the case of an attachment of goods at the same time on the same process. *Sturdivant* v. *Robinson*, 18 Pick. 175. It is in fact and in effect an assignment of the property in the hands of the trustee to the creditors by virtue of the statute. 20 Pick. 563. Even in case of the natural death of a debtor who is insolvent, a creditor who has attached and obtained his judgment before the death, has a lien, unaffected by the insolvency, and may levy his execution after the death of the debtor. *Gold* v. *Grosvenor*, 9 Mass. R. 209.

The opinion of the Court was afterwards drawn up by

TENNEY J. — The statutes of this State provide two modes by which means may be secured on mesne process, to satisfy a judgment sought to be obtained in the action. One is by direct attachment of the lands or goods of the defendant, and the other by foreign attachment. The former secures the property returned on the writ, so that the creditor may cause it to be seized and sold upon his execution, to discharge the judgment, which he may obtain; the latter protects the goods, effects and credits in the hands of the trustee at the time of the service of the original writ upon him, so that they, or their value, are in the manner pointed out, to be applied for the same purpose. In both forms of proceeding, it is the property of the defendant, which affords the security, and in each, that is a fund equally holden to be appropriated to the payment of the debt secured thereby. No sale or subsequent attachment

can impair the creditor's rights to the one, nor can any restoration to the owner, or disposition by him or the trustee defeat the right acquired by the other. The manner of making the means thus secured available is different in one case from the other, if the property is not surrendered upon a proper demand, that it may be disposed of, to satisfy the debt; but the laws furnish a remedy in behalf of the creditor for any neglect, in those to whom the property was intrusted. A failure in the plaintiff to obtain a judgment will in both modes dissolve the attachment, because there is no debt, to which the avails of the property can be applied. But if judgment is obtained, whatever is the subject of the attachment in either form, is pledged for its satisfaction, as perfectly as it would be, if it had been placed in the same situation by a contract between the parties.

Do either of these forms of attachment create a lien, after judgment, in favor of the judgment creditor, so as to be excluded from the operation of the Bankrupt Law of the United States of 1841, c. 9, by force of the last proviso in the second section? The proviso is in these words: "provided also, that nothing in this act, shall be construed to annul, destroy or impair any lawful rights of married women, or minors, or any liens, mortgages, or other securities, or property real or personal, which may be valid by the laws of the States respectively, and which are not inconsistent with the provisions of the second and fifth sections of this act."

This question has been fully examined by those distinguished for their talents, learning and long judicial experience, and although in some respects their opinions do not precisely coincide, one with the other, yet they all agree that a direct attachment is a valid lien upon the property, which cannot be defeated after judgment. Judge Story, in the case of *ex parte* Foster, 5 Law Reporter, 55, holds that an attachment on mesne process, before judgment, is not a lien, either in the general sense of the common law, or the maritime law, or in that of equity jurisprudence; but is at most a contingent security, to satisfy the judgment of the creditor, if he obtains one;

but inasmuch as the defendant may plead a discharge in bankruptcy, and thereby defeat a recovery in the action, the whole foundation on which the security rested is taken away. And afterwards, in the matter of *Cook*, 5 Law Reporter, 443, the learned Judge, carrying out the doctrine intimated in the other case, says, " the proceedings in bankruptcy after the judgment, can have no effect whatsoever upon that judgment, or upon the property attached in the suit. The creditors in the judgment have made their right (call it, if you please their lien) perfect under the attachment. It is no longer a conditional or contingent right, but it has attached absolutely to the property, and, by the laws of Massachusetts, it remains a fixed and positive lien for thirty days after judgment, by means of which the creditor at his election may obtain a preference of satisfaction out of the property attached, over all other creditors. Of that election, the Court has no authority to deprive him, or by an injunction to obstruct or stop his proceedings on his execution. If the bankrupt should obtain his discharge, it would be no bar or defence to the due execution and satisfaction of that judgment, in the regular course of proceedings thereon; for the debtor, after the judgment, has no day in Court to plead any bar or defence."

If our views are not erroneous, that a foreign attachment affords equal security with that in the ordinary form under the laws of the State, it follows, that it falls equally within the protecting provision in the proviso quoted from the second section of the bankrupt act. The creditor's risk may be greater or less, when the property secured remains in the hands of the private trustee, than when it is in the custody of a public officer, but his rights are the same under one as the other. The law guards the property, and holds it in both instances as a sacred deposit, which nothing but the want of fidelity of the one to whom it is entrusted can divert from the destination indicated by the statute. In the case of *ex parte Foster*, before cited, Judge Story remarks, " that the attachments under the trustee process," which were also brought to his consideration, by the petition as much as the attachment in the common

mode, "must be governed by similar considerations, and there-
fore, they will require no separate notice."

If we apply these principles to the case at bar, what are the
plaintiffs' rights? They obtained their judgment in which the
defendant is adjudged trustee on his own disclosure. The ex-
ecution issued upon said judgment, and being in the hands of
an officer, he demanded thereon of the defendant the goods,
effects and credits, which were in his hands and possession,
belonging to the debtors, and the same were refused. All
these proceedings were before the debtors had filed their peti-
tions to be declared bankrupts. This laid the foundation for
a judgment upon *scire facias* against the defendant, *de bonis
propriis*, to be rendered upon his examination in the first pro-
cess, without his being again examined.

Is the defendant at liberty to avail himself of that which
was not and could not be the reason of his omission to sur-
render the property, in bar of this action? When after the
refusal, he was liable, and it is not pretended, in his plea, that
any excuse therefor then existed, can this neglect avail him to
invoke a defence, which was not then open to him? If the
bankrupt act had even wrought the entire annihilation of the
judgment so far as it regarded the debtors, was not his liability
fixed by what had transpired? When the security, which the
law of our own State made perfect by that judgment, was
unaffected by the bankrupt law of the United States by its
express and positive provisions, can the omission of a duty in
the defendant take away that security?

It is insisted for the defendant, that the property of Elwell
& Pray after they filed their petitions in bankruptcy, including
that in the hands of the defendant, was vested in the hands of
their respective assignees; and that the defendant having a
day in Court can do what the debtors cannot do, who have
no opportunity to plead their discharges. This argument is
founded upon the assumption, that the *scire facias* is a process
to obtain the goods, effects and credits deposited by the prin-
cipal debtors with the trustee, as they existed at the time of
the service of the original writ upon him. The writ of *scire*

*facias* is not provided in the statute for such a purpose. No surrender of goods or effects, or any other property, short of full payment of the judgment, after the refusal of the defendant to answer the demand on the execution, could exonerate him from his liability. The plaintiffs have no further interest in the property. By that refusal he appropriated the property to his own use, and was bound to answer for the value. He no longer holds it, to be disposed of, as he did before his refusal. The property is now a matter between him and the assignees of the bankrupts. If they take it out of his hands, so that he cannot indemnify himself therefrom, in this suit, he must impute it to his omission to surrender it, and not to any fault of the law. If he had disclosed certain specific articles, and he had refused to deliver them upon a legal demand, and they were afterwards consumed by fire, would he plead this in bar of *scire facias*, because a delivery would then be impossible? A surrender, without consent of the plaintiff, would alike be impossible, if the property had remained entire.

The counsel calls in aid of his defence, a remark of Judge Story in the case of *ex parte Foster*, before referred to, which is, " a foreign attachment is a remedy liable to be defeated, by any act, that bars or takes away the remedy or right to judgment under it." We cannot think that this remark of the learned Judge was intended to have such an application. The question under examination, was whether an attachment on mesne process created such a lien or security as to be embraced in the last proviso of the second section of the bankrupt act of 1841, and in answer to the proposition, that in cases of foreign attachment under the custom of London, the attaching creditors had a lien or pledge of the goods attached in the hands of the garnishee, and that it was such security of the debt, that if the defendant became bankrupt after the attachment and before judgment, the commissioners could not take or assign the goods, excepting subject to the lien and security of the attaching creditor. The Judge denies the doctrine contended for, in relation to a foreign attachment, although apparently supported by some authorities, and says,

" the truth is, a foreign attachment is like a common attach-
ment, on mesne process, a remedy merely given and regulated
by law to enable a creditor to obtain satisfaction of his debt;
and like every other, is liable to be defeated by any act, that
bars or takes away the remedy or right to judgment under it."

As long as a party defendant had an opportunity of pleading
his discharge in bankruptcy, the lien created by a common or
a foreign attachment, being dependent upon a judgment for its
perfection, was liable to be defeated by a failure of the suit in
which either was made.   This proposition, too plain to require
argument in its support, cannot authorize a trustee to plead
such discharge in answer to a writ of *scire facias*, which is
as distinct from a process of foreign attachment, as is a suit
against an officer for not holding and surrendering on demand
property attached by him on mesne process.   The judgment
against the principal debtors cannot be impeached by them,
much less by one, who was not a party to the matter of the
suit on which it was rendered.   It is one, which cannot be en-
forced against the debtors therein, because they have been dis-
charged from the debt; but it remains a judgment not annulled
or reversed, and it is sufficient to secure to creditors any lien
made complete thereby.   When Judge Story in the matter of
*Cook*, before referred to, uses the strong and emphatic lan-
guage, that the creditor after obtaining his judgment, at his
election may obtain a preference of satisfaction out of the
property attached over all after creditors; and of that election
the Court has no authority to deprive him, or by injunction to
obstruct or stop his proceedings on his execution, we cannot
believe such a remark as he made to a matter entirely distinct
as is quoted by the counsel, can be authority in support of the
present defence.   Such a construction would make the bank-
rupt law speak a language altogether different from that in-
tended by its framers; would destroy a lien in terms and in
spirit protected by it; would give an effect to the silent and
unauthorized omission of a trustee to perform the duty imposed
upon him more powerful, than the injunction of the highest
tribunal in our land, clothed with power in equity jurisdiction in

matters of bankruptcy more ample, than that of the Lord Chancellor of England.

*Replication adjudged good.*