IN RE STEVENSON'S ESTATE.

(No. 6,617.)

(Submitted May 8, 1930. Decided June 10, 1930.)

[289 Pac. 566.]

488

*Messrs. Freeman, Thelen & Freeman,* for Appellant, submitted a brief; *Mr. J. P. Freeman* argued the cause orally.

*Mr. H. R. Eickemeyer,* for Respondent, submitted a brief and argued the cause orally.

*Messrs. Cooper, Stephenson & Hoover,* for Administrator Frank B. Brown.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by Nat Taylor from an order made in the matter of the estate of Claire S. Stevenson, deceased, wherein the district court of Cascade county preferred the claim of Smith & Eickemeyer over that of Taylor.

On April 16, 1927, Smith & Eickemeyer brought suit against Claire S. Stevenson to recover the sum of $4,500 and in the suit procured the issuance of a writ of attachment which on that day was duly levied upon real property of the

defendant in Cascade county. The suit had not proceeded to judgment when the defendant died. Taylor had obtained a deficiency judgment in the sum of $1,500 against Claire S. Stevenson in Toole county. On June 7, 1927, Taylor filed a transcript of his Toole county judgment in the office of the clerk of the district court of Cascade county.

On August 31, 1927, Claire S. Stevenson died. Her estate was probated in Cascade county, Frank B. Brown being appointed administrator. In due time Smith & Eickemeyer presented to the administrator their claim for $4,500, asking its allowance as a preferred and secured claim, based upon the attachment. The claim was compromised for $3,500, and in that sum was allowed and approved by the administrator and the district judge.

In due time Taylor presented his claim for the sum of $1,500, based upon his deficiency judgment, asking for the allowance thereof as a secured and preferred claim. It was allowed by the administrator and the district judge.

Prior to the attachment thereon decedent had mortgaged the land to Charles J. Kops. The land was sold by the administrator for $10,600, and after paying the amount due upon the mortgage there remained to the credit of the administrator from the proceeds of the sale the sum of $2,768.78.

On June 22, 1929, the administrator filed his first account, in which he stated that in his opinion Smith & Eickemeyer were entitled to this sum of money and that the remainder due them, and all other claims except those for funeral expenses, expenses of last sickness, and expenses of administration, should be paid pro rata. The estate was found to be the owner of certain personal property but not sufficient in amount to pay its debts in full.

Taylor filed objections to the account, asserting that his claim was entitled to preference over that of Smith & Eickemeyer and by reason thereof he was entitled to the surplus from the proceeds of the sale of the land, but alleging that if it be decided by the court that the claim of Smith & Eickemeyer is a preferred claim, the two preferred claims should

be paid ratably, neither having priority over the other. Upon the hearing the court adjudged that Smith & Eickemeyer's claim was superior to that of Taylor, and that as Taylor's claim could not be satisfied out of the proceeds of the sale of the real estate, it ceased to be a lien.

The determinative question is whether the Smith & Eickemeyer attachment has precedence over the lien of Taylor's judgment.

1. At the outset counsel for Taylor say the attachment levy did not in fact create a lien upon decedent's real estate. As we shall see, this position cannot be maintained. While the origin of the remedy of attachment is of great antiquity in the English law, the right to and operation·of the remedy is regulated wholly by statute in this country as well as in England. "The avowed principle which lies at the basis of all these enactments," says the author of the note appended to *President etc. of Franklin Bank* v. *Bachelder* (23 Me. 60), 39 Am. Dec. 601, 607, "Is that of affording to a creditor a certain and speedy remedy for the satisfaction of his demand out of the property attached, contingent, however, upon the fact of his recovering judgment in the action in which the attachment is issued. The fact that rights created by an attachment are not absolute, but until the recovery of judgment are contingent and provisional, has induced some writers to be of the opinion that before judgment there is no such thing as an attachment lien: See the opinion of Judge Story in *Ex parte Foster* [Fed. Cas. No. 4960], 2 Story, 131. This opinion has been controverted by the weight of authority: See notes to *Jackson* v. *Ramsey,* 15 Am. Dec. 253; *Fettyplace* v. *Dutch,* 23 Am. Dec. 688; *Carter* v. *Champion,* 21 Am. Dec. 695."

The design of our law seems to be to afford the creditor upon the statutory conditions a security for every demand not otherwise secured arising upon contract for the direct payment of money in which there has been a default in payment, as Judge Sawyer put it. Continuing, he said: "Security to the vigilant seems to be the leading idea upon which

the law is framed. The moment the attachment is levied, a lien upon the property attached is acquired. The lien becomes specific, and the party acquires a right to have any amount that may be found due upon the contract satisfied out of his specific property. It is a right vested upon the conditions prescribed by the statute. * * * It is true that the attachment lien can only be made available through a judgment of some sort. But this is ordinarily equally true of a lien by mortgage, or a mechanic's lien. * * * Mechanics' liens for the construction of buildings; for the manufacture or repair of articles of personal property; innkeepers' and carriers' liens, and the like, are as much liens *in invitum,* imposed by law independent of conventional stipulation, as liens by attachment, and, when the right has once attached, the latter are no less sacred, and no more without the pale of legal remedy than the former.'' (Dissenting opinion in *Myers* v. *Mott,* 29 Cal. 359, 375, 89 Am. Dec. 49. And see *Hawley* v. *Isaacson,* 117 Wash. 197, 21 A. L. R. 268, 200 Pac. 1109.)

The levy of an attachment upon lands constitutes a specific, albeit an inchoate, lien thereon. If the plaintiff obtains judgment, the lien is thereby perfected, relates back to the time of the levy, and cuts off intervening encumbrances. (*Frellson* v. *Green,* 19 Ark. 376.) Moreover, our statute recognizes the levy of an attachment as a lien. (Sec. 9274, Rev. Codes 1921.)

2. The next question is: Does the death of the defendant ▮ after the levy, and before judgment in the action to which the attachment proceeding is ancillary, dissolve the attachment, or at least render it unenforceable?

Counsel for Taylor, with earnestness and ability, argue that in view of the condition of our statutes, and prior decisions, the question must be answered in the affirmative. Special reliance is placed upon the majority opinion in *Myers* v. *Mott,* supra. With respect to that case we think the dissenting opinions are grounded upon sounder reasoning than is the majority opinion and the conclusion of the dissenters is in

accord with justice and with the spirit as well as the letter of our statutes. (*Hawley* v. *Isaacson,* supra.) Incidentally, California has no statute like our section 9274, mentioned later.

In the note to *Hawley* v. *Isaacson,* 21 A. L. R. 268, 269, the editor says, in the majority of the jurisdictions where there is no specific statute providing for the survival or the dissolution of an attachment by death, it is held that the death of the principal defendant in such proceedings after the levy does not affect the attachment, citing a long list of cases. Corpus Juris says unless there is a statute providing that an attachment levied before the death of the defendant is dissolved by the defendant's death, there seems to be no reason why the attachment lien should not continue after his death, unless the principal action abates by reason thereof. (6 C. J. 280.)

Prior to the death of Claire S. Stevenson, unquestionably the lien of the attachment was superior to the lien of Taylor's ▮ judgment. The lien of an attachment upon real property is prior to the lien of a judgment obtained prior thereto but not docketed until after the levy of the attachment. (*Sklower* v. *Abbott,* 19 Mont. 228, 47 Pac. 901.)

Clearly the action brought by Smith & Eickemeyer against ▮ decedent did not abate upon her death: "an action, or cause of action, or defense, shall not abate by death, or other disability of a party, or by the transfer of any interest therein, but shall in all cases, where a cause of action or defense arose in favor of such party prior to his death, or other disability, or transfer of interest therein, survive, and be maintained by his representatives or successors in interest." (Sec. 9086, Rev. Codes 1921.)

The statute requires the presentation of claims in action pending at the time of defendant's death; if an action is pending against the decedent at the time of his death, the plaintiff must "present his claim to the executor or administrator for allowance or rejection, authenticated as required in other cases; and no recovery shall be had in the action,

unless proof be made of the presentations required." . (Sec. 10183, Rev. Codes 1921.) Upon compliance with these sections, the action does not abate; it goes forward just as if the defendant had not departed this life.

Now section 9274, Rev. Codes 1921, declares: "The death of the defendant does not release the attached property, and a lien of the attachment may be enforced as in the case of other liens." This language is clear enough as far as it goes; but how is the lien to be enforced? This question was suggested, but not decided, in *Davis* v. *Claxton,* 82 Mont. 574, 268 Pac. 787. The first difficulty is encountered when we read the provisions of section 10307: "The debts of the estate, subject to the provisions of section 8353, must be paid in the following order: 1. Funeral expenses. 2. The expenses of the last sickness. 3. Debts having preference by the laws of the United States, or of the state. 4. Judgments rendered against the decedent in his lifetime, and mortgages, in the order of their date. 5. All other demands against the estate."

Section 8353, referred to in section 10307, gives preferential rights to the payment of certain wages and salaries. This statute, it will be observed, undertakes to provide for the payment of all debts of the estate and to specify the order of payment. It could hardly be more general in character. It is not controlling as to the payment of debts secured by mortgage, as this court has declared in *In re Horsfall's Estate,* 20 Mont. 495, 52 Pac. 199. Whether it will be held controlling as to a debt secured by pledge when the point is directly presented we think is doubtful, notwithstanding what is said in *State ex rel. Rankin* v. *Yellowstone Valley Bank & Trust Co.,* 75 Mont. 43, 243 Pac. 813, to which counsel for Taylor call our attention.

It is notable that section 10307 refers to one lien only— unless we include judgments, which may be liens upon real property, and mortgages—that provided for in section 8353. Does it follow, then, that all other liens, those created by contract and those by operation of law (sec. 8225, Rev. Codes 1921), necessarily fall in class 5 of section 10307? Counsel for

Taylor so contend. The claim of Smith & Eickemeyer, they say, (a) had not been reduced to judgment; (b) if it were reduced to judgment, the lien would merge in the judgment; (c) execution may not issue upon a judgment rendered against the estate. Ergo, decedent's death dissolved the attachment despite the declaration of section 9274, or in any event rendered it inoperative.

At first blush the problem presents some difficulty, but for the reasons presently to be stated we think counsel's contention cannot be sustained.

(a) Upon the substitution of Brown, the administrator, for decedent, judgment might have been rendered against the estate, it is true. This action was unnecessary. Smith & Eickemeyer presented the claim to the administrator, who, upon the compromise, approved it for $3,500, and that action was approved by the district court. The claim, then, having been filed in the court, was an acknowledged debt of the estate. (Sec. 10177, Rev. Codes 1921.) "A judgment rendered against an executor or administrator, upon any claim for money against the estate of his testator or intestate, only establishes the claim in the same manner as if it had been allowed by the executor or administrator and a judge; and the judgment must be that the executor or administrator pay, in due course of administration, the amount ascertained to be due. * * * " (Sec. 10185, Rev. Codes 1921.) Unless the lien was dissolved, or, what amounts to the same thing, rendered inoperative by the death of defendant, it was perfected to the extent of $3,500 by the allowance of the claim which was approved in that amount.

(b) Granted that upon the rendition of judgment the lien would merge therein. When a lien is merged in judgment it is perfected, not destroyed. The judgment creditor, upon the perfection of his lien by adjudication, then is entitled to the remedies the law affords for obtaining the fruits of his diligence. The priority acquired by attachment is maintained and enforced under the judgment. (Drake on Attachment, 7th ed., sec. 224a.)

(c) Section 10186, Revised Codes 1921, provides: "When any judgment has been rendered for or against the testator or intestate, in his lifetime, no execution shall issue thereon after his death, except as provided in section 9422. A judgment against the decedent for the recovery of money must be presented to the executor or administrator like any other claim. If execution is actually levied upon any property of the decedent before his death, the same may be sold for the satisfaction thereof; and the officer making the sale must account to the executor or administrator for any surplus in ▉ his hands. * * * " Section 9422 directs that: "Notwithstanding the death of a party after the judgment, execution thereon may be issued, or it may be enforced as follows: * * * 2. In case of the death of the judgment debtor, if the judgment be for the recovery of real or personal property, or the enforcement of a lien thereon, execution may be issued with the same effect as if he were still living."

It thus appears that execution may issue against the estate of a decedent upon a judgment rendered before death if the judgment be for the enforcement of a lien thereon.

Another statute now comes into the discussion: "No holder ▉ of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator, except in the following case: An action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto where all recourse against other property of the estate is expressly waived in the complaint." (Sec. 10180, Rev. Codes 1921.) The exception rests upon the principle that the property, to the extent of the lien, is segregated from the general assets of the estate. This section authorizing, as it does, the maintenance of an action against an estate in the first instance without presentation of a claim to the executor or administrator, necessarily carries the inference that the successful lienholder may enforce the judgment by execution upon the property to which the lien attaches. (*Craig* v. *Wagner*, 88 Conn. 100, Ann. Cas. 1917A, 160, 89 Atl. 916.) Construing this sec-

tion with section 10186, it follows that if the property sells for more than the judgment and costs of sale, the officer making the sale must account to the executor or administrator for any surplus in his hands. And as a necessary corollary it must follow that the holder of the judgment, if he so desires, upon obtaining judgment, may present the claim to the executor or administrator for allowance, the same to be satisfied from the property subject to the judgment. In the case of an involved estate—for instance, where many liens have been foreclosed—this course might be found to be highly desirable.

From the earliest days our statutes have provided for mechanics' and materialmen's liens. And for many years we have had statutory enactments respecting loggers' liens, threshermen's liens, agisters' liens and the list might be extended. All of these provide for the foreclosure of the liens. None of these is comprehended by the provisions of section 10307.

Provision has been made, we have seen, for the continuance ■ of actions after death, for the sale of property upon executions levied before but not completed until after death, for the issuance of executions after death upon judgments obtained before death for the foreclosure of liens, for the foreclosure of liens in actions against an executor or administrator. A seeming hiatus appears in the legislation respecting the course to be pursued when in a pending action to foreclose a lien the defendant dies before judgment; but this difficulty is but seeming. We think all that is necessary in such case is for the plaintiff to present his claim in accordance with section 10183, and thereupon prosecute his action to judgment, whereupon the same relief may be afforded as if the defendant's death had not occurred; or in case the claim is approved by the administrator and judge, rest upon that approval as upon a judgment, the duty then devolving upon the administrator to apply the property encumbered by the lien to the satisfaction of the claim. District courts possess general jurisdiction and have all the means necessary to carry that jurisdiction into effect, "and in the exercise of this juris-

diction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." (Sec. 8882, Rev. Codes 1921.)

The exception contained in section 10180 is a special and ▉▉▉▉▉▉ definite provision relating to a specific subject; the statutes relating to liens are special as respects the subjects of which they treat; section 9274 is a special and definite statute—the attachment lien "may be enforced as in the case of other liens." Before these, the provisions of the general statute, section 10307, where any repugnancy exists, must give way. Where one statute deals with a subject in general and comprehensive terms and another deals with a part of the same subject in a more minute and definite way, to the extent of any necessary repugnancy between them the special will prevail over the general statute. (*Stadler* v. *City of Helena*, 46 Mont. 128, 127 Pac. 454; *Walden* v. *Bitter Root Irr. Dist.*, 68 Mont. 281, 217 Pac. 646; *State* v. *Certain Intoxicating Liquors*, 71 Mont. 79, 227 Pac. 472.) In the construction of a statute the intention of the legislature is to be pursued if possible. (Sec. 10520, Rev. Codes 1921.)

It cannot be imagined, when we consider these several statutes with reference to their subject matter, that the legislature pursued the witless policy of creating lien rights and then destroying them in some instances by the operation of section 10307. To hold that the death of the defendant Stevenson dissolved the attachment would be to nullify—in effect to repeal—section 9274. Such a holding would be contrary to legislative intent and completely out of harmony with the spirit underlying the lien statutes we have been discussing.

Whether, had Smith & Eickemeyer pursued their claim to judgment, execution might issue thereon, we need not now determine. We are satisfied that the course they pursued was proper; that when the administrator and district judge approved the claim for $3,500 the lien was preserved to the extent of the balance of the money remaining after the satisfac-

tion of the mortgage debt; and that the action of the court in giving Smith & Eickemeyer's claim preference over Taylor's was in accordance with law.

The order is affirmed.

Associate Justices Matthews, Galen and Ford concur.

Mr. Justice Angstman, being absent, did not hear the argument and takes no part in the foregoing decision.

## On Motion for Rehearing.

### (Decided July 18, 1930.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Rehearing is asked on the ground that we overlooked one of appellant's assignments of error which affects the disposition of $998.33. The assignment was considered unimportant, not overlooked.

It appears that the decedent had pledged diamonds appraised at $1,395.50 to secure a debt of $948. By order of the court the administrator is permitted to redeem the diamonds pledged by the use of money obtained from the sale of the real estate, upon which Smith & Eickemeyer were entitled to a lien. This amounts to no more than borrowing the money for the purpose of redeeming the diamonds and thereafter replacing the money borrowed. Of course, Smith & Eickemeyer have no lien upon any property except that by them attached. Whether they did, or did not, object to such use of the money upon which they have a lien, is of no concern to Taylor. The court found that the "amount on hand to the credit of the estate is the sum of $3,372.45; that after payment of the administrator's fee, the claim of Columbus Hospital and the fee of the auctioneer, there will remain to the credit of the estate the sum of $1,770.45," which sum should be paid to Smith & Eickemeyer to apply upon their claim

of $3,500, of which $2,768.78 was declared to be preferred. Of the balance due Smith & Eickemeyer ($1,729.55), $998.33 was declared to be a preferred claim and $731.22 a ratable claim.

When the order was made the diamonds had not been sold; consequently the court ordered that the administrator be authorized and directed to pay Smith & Eickemeyer "from any money which shall come into his hands as administrator the sum of $998.33, if so much be realized, and if less be realized then whatever amount may be realized." In other words, this was designed to make up the full amount of $2,768.78, the amount remaining from the sale of the real estate, which Smith & Eickemeyer were entitled to receive in preference to any claim not equal or superior to their own. If it be conceded that the means adopted were irregular and could not have been employed over the protest of Smith & Eickemeyer, the order was not prejudicial to the rights of Taylor.

The motion for a rehearing is denied.

ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.

MR. JUSTICE ANGSTMAN, not having taken part in the original decision, takes none in the above.