ANDREWS ET AL., APPELLANTS, *vs.* SMITHSON ET AL., RE-
SPONDENTS.

(No. 8328.)

(Submitted January 8, 1943.   Decided April 23, 1943.)

[136 Pac. (2d) 531.]

*Messrs. McKenzie & McKenzie,* for Appellants, submitted an original and a reply brief; *Mr. John McKenzie, Jr.,* argued the cause orally.

*Mr. M. J. Lamb* and *Mr. Leo C. Graybill,* for Respondents, submitted a brief; *Mr. Lamb* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action to quiet title to 360 acres of land in Cascade county. The complaint is in the usual form except the clause suggested in section 9480, Revised Codes, relative to unknown parties, is not employed. Demand is made for possession of the premises, damages for use of the lands for a period of years in the sum of $7,000, and adjudication of title in favor of the plaintiffs. The answer is a general denial followed by two affirmative defenses; the first is a recital of the facts upon which the defendant Smithson grounds her title, and the second is a recital of facts upon which laches and estoppel are pleaded and predicated. The reply is a general denial of the affirmative matter alleged in the answer. The defendant demands judgment quieting her title and costs of suit. By stipulation the defendant Mehmke, being merely a tenant on the lands, was dismissed as a defendant in so far as title to the lands was concerned, but required to account for the landlord's share of the crop.

The facts are these: In November, 1929, A. B. Andrews, husband of one of the plaintiffs, Jessie K. Andrews, and father of the other plaintiffs, was the owner of the lands involved in this action. November 6, 1929, the Advance-Rumely Thresher Company commenced an action against Andrews in the district court in and for Yellowstone county to recover on a promissory note. Summons was issued and personally served, with a copy of the complaint, on Andrews in his home county of Wheatland, by the sheriff of that county, and a writ of attachment was issued and levied on the lands by the sheriff of Cascade county November 7, 1929; November 14, 1930, judgment was made and entered in Yellowstone county in favor of the Thresher Company for the amount of the note and interest, attorney's fees and costs; February 28, 1931, Andrews died in Wheatland county, and Jessie K. Andrews, his wife, was appointed administratrix of his estate by the district court of Wheatland county; January 18, 1932, execution was issued out of the district court of Yellowstone county directed to the sheriff

of Cascade county with instructions that he proceed to advertise and sell the land previously attached by him at the commencement of the action. Pursuant to such instructions the sheriff of Cascade county sold the lands on February 11, 1932, to Glenn Smithson, assignee of the judgment creditor, and issued a duplicate certificate of sale to Smithson, filed the original certificate of sale in the office of the county clerk and recorder of Cascade county, and made his return to the district court of Yellowstone county. No redemption was made from the execution sale, and on February 15, 1933, the sheriff made and delivered a sheriff's deed of the lands to Glenn Smithson, which deed was recorded in Cascade county February 28, 1933. Glenn Smithson died at Long Beach, California, in October, 1937, and shortly before his death he delivered a deed to the lands to his wife, the defendant. July 6, 1933, after having received the sheriff's deed to the lands, Smithson paid delinquent taxes thereon for the years 1931 and 1932 in the sum of $567.88, and he and his wife thereafter paid all the taxes levied on the lands during their respective periods of possession in annual payments, running from $181.73 to $215.61, down to and including the year 1939, the year in which this action was commenced. The cause was tried to the court sitting without a jury. Findings of the trial court were in accord with the contentions of the defendant in all material particulars. Judgment was made and entered in favor of the defendant, and the plaintiffs appealed.

We deem it unnecessary to consider the numerous assignments of error in detail. The principal attack upon the defendant's title is on the ground that the sheriff's sale under execution is void for the reason that a transcript of the docket of the judgment obtained in Yellowstone county was not filed in the office of the clerk of court of Cascade county prior to issuance of the writ of execution. Filing a transcript of the judgment obtained in Yellowstone county in the office of the clerk of the court in Cascade county under the circumstances would have accomplished nothing more than had been accomplished by the levy of the attachment made by the sheriff of

Cascade county when the action was commenced. Levy of the attachment on commencement of the action, and filing a transcript of the judgment in a county other than that in which the judgment was obtained and entered accomplish the same thing—either process merely holds the property intact and free from attachment or execution by other creditors or transfer by the debtor until execution can issue and the property under lien be sold. Whether the judgment creditor has acquired a lien by attachment or by filing a transcript of his judgment obtained in another county than that where the property is located, is not vitally material. In either case the judgment creditor cannot obtain the fruits of his judgment until the property is advertised and sold according to law.

Such, in effect, is the rule laid down in *Holter Hardware Co.* v. *Ontario Min. Co.*, 24 Mont. 184, 61 Pac. 3, 6, an action on all fours with the case at bar. In that case suit was commenced in Lewis and Clark county, and attachment was levied on property in Deer Lodge county and sold under execution without any transcript of the judgment obtained in Lewis and Clark county having been filed in Deer Lodge county. This court there said: "The levy of the writ of attachment created the lien. The property was thereby seized and held, and there was no necessity for filing a transcript of the judgment. * * * An attachment having been levied within the life of the writ, a lien is created, which may be enforced by execution sale without further levy." (See, also, *Britannia Min. Co.* v. *United States F. & G. Co.*, 43 Mont. 93, 115 Pac. 46, and cases cited; *In re Stevenson's Estate*, 87 Mont. 486, 289 Pac. 566.)

In the case of *Britannia Min. Co.* v. *United States F. & G. Co.*, supra, it was said: "The property was already in the custody of the law and beyond the control of the judgment debtor, so far as the rights of the creditor were concerned. The execution was the mere instrumentality through which the creditor might reap the fruit of a seizure which had already been made by virtue of the judgment lien. In such a case the Code contemplates that the sheriff shall give the required notice and sell.

Nothing more is required, and the references to a levy, in section 6827 and elsewhere, can apply only to property of a character different from that we are now considering. To make a formal levy in a case of this kind would be an idle ceremony, without significance, legal or otherwise.''

Counsel for plaintiffs, however, in their brief, rely upon and quote this part of section 9417, Revised Codes: ''If the execution be issued to a county other than the one in which the judgment was recovered, on the day when the transcript of the docket was filed in the office of the clerk of the district court of such county, stating such day, or any time thereafter,'' etc., and contend that as this provision of the statute requires the execution to state the day such transcript was filed in the county where the property is located, ''it follows that the transcript of the docket of such judgment must be docketed in that other county before execution to that county may issue.'' It is true, of course, that if judgment be not preceded by attachment of the property located in a county other than the county in which the judgment was obtained and entered, then the above section of the statute would have to be complied with by filing a transcript of the docket in the county where the property is located before sale under execution could be had legally, but we think this provision of the statute is intended to direct the procedure in actions wherein attachment is not allowed or none was levied.

The plaintiffs lose sight of the fact that section 9417, Revised Codes, gives no direction as to the disposition of property which has been attached. We think land that has been attached should be sold under the procedure mentioned in section 9276, Revised Codes. That section provides that ''if judgment be recovered by plaintiff, the sheriff must satisfy the same out of the property attached by him * * *;'' that any cash he may have on hand by attachment must first be applied and ''If any balance [of the judgment] remain due, and an execution shall have been issued on the judgment, he must sell under the execution so much of the property [attached], real or personal, as may be necessary

to satisfy the balance, if enough for that purpose remain in his hands. Notices of the sales must be given, *and the sales conducted as in other cases of sales on execution.*" Section 9277, Revised Codes, provides that if any balance shall remain due after exhausting the proceeds from attached property "the sheriff must proceed to collect such balance as upon an execution in other cases."

It is clear that the law intends that where property has been attached the source of satisfaction of the judgment therefrom must first be exhausted before any other property of the judgment debtor is taken. It is only for the satisfaction of any deficiency therein that the sheriff may proceed generally under the execution. The law is specific as to the duty of the sheriff where he holds property by attachment.

The execution issued in the instant case directed the sheriff ▮ to satisfy the judgment "out of the personal property of the said debtor, or if sufficient personal property of said debtor cannot be found, then out of the real property in your county belonging to him on the day whereon said judgment was docketed in the said county or at any time thereafter." That part of the writ of execution that refers to personal property is mere surplusage in the instant case as there was no purpose to sell any property other than that attached.

Under the situation in the instant case the sheriff was not controlled wholly by the execution. He already held property by attachment, and, regardless of the language of the execution, it was his duty to proceed to satisfy the judgment out of the property attached before any other property could be taken. When the execution came into his hands he must look to section 9276, Revised Codes, for his guide as to what he should do. This apparently he did, for he did exactly what the statute says he must do. The sheriff proceeded regularly and the sale was valid.

Plaintiffs cite several Wisconsin cases to sustain their contention, among which is that of *Kentzler* v. *Railway Co.*, 47 Wis. 641, 3 N. W. 369, 372, wherein it was held that the filing

of a judgment in another county, where it was desired to have execution, was jurisdictional. The court said: "The execution was void for not reciting the docketing of the judgment in the county to which it was issued." That decision was followed in *Bugbee* v. *Lombard*, 88 Wis. 271, 60 N. W. 414. It is obvious from what we have said as to sales where land has been attached that the Wisconsin rule is not in point here, and it is not applicable for the further reason that the Wisconsin practice follows a specific statute which is mentionetd in the *Kentzler case* above as being section "2971, R. S. 1878." It was held in that case that "the docketing of a judgment in the county to which the execution may go is, * * * a condition precedent of the authority to issue it."

In their reply brief, plaintiffs contend that the *Holter case*, supra, relied on section "1200," now section 9413, Revised Codes, whereas plaintiffs rely not upon 9413 but 9417, and say this last section was not mentioned in that case, but a ruling was made therein that is sustained by the section, and it is immaterial whether the section was mentioned or not.

The trial court found that the sale was duly advertised and the land sold to Glenn Smithson, husband of the defendant, a duplicate certificate of sale issued to Smithson, the original certificate filed in Cascade county and due return made of the sale to the clerk of court of Yellowstone county; no redemption being made from the execution sale, a deed was issued to Smithson on the expiration of the year of redemption, which deed was duly recorded in Cascade county, and Smithson entered into possession of the land February 11, 1932, remained in possession thereof until on or about the time of his death in 1937, and that shortly before his death he transferred the land to his wife, the plaintiff, by deed duly recorded, and who has been in possession thereof at all times since. We find no error in the findings of the court in this respect.

The next contention of the plaintiffs is that the sale was contrary to the provisions of section 10186, Revised Codes, which provides in part that "when any judgment has been

rendered for or against the testator or intestate, in his lifetime, no execution shall issue thereon after his death, except as provided in section 9422." Section 9422 provides in part: "In case of the death of the judgment debtor, if the judgment be for the recovery of real or personal property, or the enforcement of a lien thereon, execution may be issued with the same effect as if he were still living." The plaintiffs contend that "the judgment in question is not one for the recovery of real or personal property, nor was it one for the enforcement of a lien thereon. Therefore it was not and is not a judgment that comes within the exceptions stated in section 9422," citing *Davis* v. *Claxton*, 82 Mont. 574, 268 Pac. 787, 790, in support of such contention.

In the *Claxton* case this court, having under consideration that part of section 10186 which reads, "a judgment against the decedent for the recovery of money must be presented to the executor or administrator like any other claim," after quoting the pertinent parts of section 9422, said: "While this court has never been called upon to pass upon the question, in other states having similar statutory provisions it is held that the lien acquired by attachment in aid of a mere money judgment does not authorize the issuance of an execution after the death of the judgment debtor, as such a judgment is not one for the 'enforcement of a lien' within the meaning of the section. (*Rose* v. *Dunbar*, 20 Idaho 1, 115 Pac. 920, Ann. Cas. 1912D, 1046, citing *Myers* v. *Mott*, 29 Cal. 359, 89 Am. Dec. 49, and *Yankton Savings Bank* v. *Gutterson*, 15 S. D. 486, 90 N. W. 144; *Weaver* v. *Pickard*, 7 Utah 296, 26 Pac. 581)". The court, however did not follow the rule mentioned, but on the contrary further said: "We have a further statute on the subject which provides that 'the death of the defendant does not release the attached property, and a lien of the attachment may be enforced as in the case of other liens' (sec. 9274, Rev. Codes 1921), which may indicate a legislative intent that, in this state, the attachment lien may be enforced by execution; however, we are not now called upon to determine whether section 9274 has

that effect or not, as the case presented does not rest upon the validity of executions issued, * * *.''

This court did not rule on the question involved here in the *Claxton case,* namely: Does the levy of an attachment on real estate made at the commencement of an action to collect an unsecured promissory note create a lien which may be enforced by execution where the levy was made and the judgment obtained during the lifetime of the debtor? We think a careful analysis of sections 10186, 9422 and 9274 of our Codes compels an affirmative answer.

It will be noted that this court did not adopt the ruling on the question that it states had been laid down in California, Idaho, South Dakota and Utah in accordance with statutes similar to our sections 10186 and 9422, but went on to say: ''We have a further statute on the subject'' and then quotes section 9274. The plaintiffs here rely on the decisions of the four cases cited on this point in the Claxton opinion and ignore section 9274. Our sections 10186 and 9422 were adopted from California, and Idaho, South Dakota and Utah likewise appear to have adopted their similar sections from the statutes of that state. None of such states have any such statute as our section 9274. The rules announced in those states were in actions determined under statutes like our sections 10186 and 9422, and without being limited by any statute like our section 9274.

Our section 9274 places liens by attachment in the same category ''with other liens.'' That section was not enacted until 1895, and so far as it appears from the Codes, it was an original creation of the Montana legislature. The rule followed in the states mentioned was rendered nugatory in this jurisdiction by the enactment of our section 9274, and this section having been enacted subsequent to section 9422 and 10186, any conflict between the three must necessarily be determined according to section 9274. But it is our view that there is no conflict between the three sections. By section 9422 liens are excepted from the application of 10186, and 9274 gives to a creditor holding an attachment lien rights as broad and comprehensive as

the holder of any other kind of lien. So construed, there is no conflict between sections 10186 and 9274. By the levy of the attachment on the lands in Cascade county, rights as broad and as exclusive were acquired by the defendant as the lien of a mortgage or any other.

It is contended that "the editors of Corpus Juris Secundum, in 33 C. J. S. [Executions, sec. 48], at page 180, interpret the holding in the *Stevenson case* [*In re Stevenson's Estate,* 87 Mont. 486, 289 Pac. 566] on this point as follows: " 'Statutes sometimes prevent issuance of an execution unless the judgment is for the recovery of real or personal property, or for the enforcement of a lien thereon, *and it is held thereunder that the fact that an attachment was levied does not authorize an execution on the ground that the action then became one to enforce a lien.*' "

It is erroneous to attribute the above citation as a whole to the interpretation placed by Corpus Juris Secundum on the Stevenson decision. That part of the quotation placed in italics by counsel for plaintiffs is grounded upon the Idaho case upon which plaintiffs particularly rely, namely, *Rose* v. *Dunbar,* 20 Idaho 1, 115 Pac. 920, Ann. Cas. 1912D, 1046. The *Stevenson case* is cited by C. J. S. in support of only the other part, the first part not in italics. The Idaho rule is in direct conflict with our section 9274, hence, along with the other cases cited, is not in point.

We are inclined to think that any equities that might be said to repose in the plaintiffs were foreclosed by defendant's second affirmative defense setting up the plea of estoppel by reason of laches. The facts are set out in the pleadings with particularity to the effect that for approximately ten years after the entry of judgment, and for a period of eight years after the sale of the lands under execution and issuance of the sheriff's certificate the plaintiffs remained passive and acquiesced in the possession, use and occupation of the premises by Smithson and his wife, and made no complaint relative to the execution sale or issuance of the sheriff's deed to Smithson,

except that in 1936 the widow, Jessie K. Andrews, demanded compensation for her dower right in the lands; that prior to execution and sale of the lands, taxes levied thereon had been permitted to become delinquent and Smithson and his wife, the defendant, paid the taxes at the times and in the sums heretofore mentioned; that after negotiations with the then administratrix, Jessie K. Andrews, and two or three of her sons, including Tracy Andrews, the present administrator, Smithson and his wife paid to Jessie K. Andrews $400 for a quitclaim deed ▮ releasing her dower interest in the lands, and none of the plaintiffs have at any time offered to repay any portion of such taxes or refund the $400 paid to Jessie K. Andrews for her dower interest. Such offer is a condition precedent to any right to a decree in an action to quiet title. (See *Swingley* v. *Riechoff,* 112 Mont. 59, 112 Pac. (2d) 1075.) The acceptance of the $400, for the dower interest, was a clear recognition of Smithson's title to the land.

Tracy Andrews, who succeeded the widow as administrator of the estate in 1940, and who lived in Great Falls not far from the land, testified that he knew about the sale of the land under execution; that they tried to raise the money to redeem the land, but could not, and that they had never made any demand of Smithson or his wife for possession of the land; that he knew about the land being farmed by the tenant; that he knew that Smithson claimed to own the land, and that after Smithson's death Mrs. Smithson claimed it.

We deem it unnecessary to review other contentions made by the parties.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON and ADAIR concur.

MR. JUSTICE ANDERSON concurs in the result.

Rehearing denied.